| ESTADO LIBRE ASOCIADO DE PUERTO RICO<br>TRIBUNAL DE APELACIONES<br>PANEL XII | | |
|---|---|---|
| COMISIONADO DE SEGUROS DE PUERTO RICO<br>RECURRIDO<br><br>v.<br><br>TRIPLE-S SALUD, INC.<br>RECURRENTE | KLRA202500273 | Revisión judicial procedente de la Oficina del Comisionado de Seguros<br><br>Caso Núm. I-2024-063<br><br>Sobre: Interpretación de póliza de seguro; imposición de multa administrativa |

Panel integrado por su presidenta, la Jueza Grana Martínez, la Jueza Díaz Rivera y la Juez Lotti Rodríguez[1].

Lotti Rodríguez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 26 de agosto de 2025.

La aseguradora, Triple-S Salud, Inc. (Triple-S o recurrente), solicita que revoquemos la *Resolución* emitida el 7de marzo de 2025, en la que la Oficina del Comisionado de Seguros de Puerto Rico (Comisionado de Seguros), le ordenó a rembolsar los gastos médicos incurridos por el asegurado José Julián González López (señor González López o asegurado) y confirmó la multa administrativa impuesta de $10,000.00 en la Orden Núm. I-2024-63 del 3 de septiembre de 2024 por alegadas prácticas desleales.

## I.

El 5 de marzo de 2024, el padre del asegurado, el Lcdo. Homero González López, presentó una *Querella* contra la parte recurrente mediante correo electrónico cursado a la Directora Auxiliar de Investigaciones de Servicios al Consumidor de la Oficina

---

[1] Conforme la DJ2024-062C del 6 de mayo de 2025, mediante la cual se asignó la integración de la Juez Glorianne M. Lotti Rodríguez al Panel XII.

Número Identificador

SEN2025_____

del Comisionado de Seguros.[2] En esencia, solicitó que se investigara la denegación de la preautorización por parte de Triple-S, ya que alegó que el Dr. Bibiloni no es ortopeda oncólogo y que su asegurado necesitaba recibir el tratamiento de emergencia.[3] Ese mismo día, el Comisionado de Seguros notificó a Triple-S un *Requerimiento de Información*, en el que ordenó, entre otras cosas, informar las acciones que tomaría para resolver la situación, copia del expediente, evidencia sobre la posición de Triple-S y cualquier otro documento que justificara la denegatoria.[4]

Así pues, el 15 de marzo de 2024, Triple-S presentó su contestación al requerimiento de información.[5] Allí, indicó que la póliza contratada con el asegurado establece que el área de servicios es Puerto Rico, y que, por lo tanto, los servicios cubiertos son dentro de dicha jurisdicción. Asimismo explicó, que, a modo de excepción, la póliza cubre por servicios que se reciben en Estados Unidos en dos instancias: (1) cuando estando en Estados Unidos, el asegurado sufre una emergencia médica; (2) cuando el servicio no está disponible en Puerto Rico.[6] Ante ello, Triple-S argumentó que no ocurrió ninguno de los dos escenarios. Esto, ya que alegó que la cirugía del asegurado no fue un procedimiento de emergencia médica y que el servicio médico sí estaba disponible en Puerto Rico a través del Dr. Bibiloni.

El 19 de marzo de 2024, el Ayudante Especial I del Comisionado de Seguros mediante correo electrónico contestó una consulta sobre la cubierta *"Out of Area Coverage"* que aplica en Estados Unidos. Allí consignó lo siguiente:

> Para que la cubierta de emergencia en Estados Unidos se active, el asegurado tenía que haber sufrido una emergencia en Estados Unidos y evidenciar que el

---

[2] Apéndice 1 del *Recurso de Revisión Administrativa*, págs. 1-8.
[3] Íd.
[4] Apéndice 2 del *Recurso de Revisión Administrativa*, págs. 9-17.
[5] Apéndice 3 del *Recurso de Revisión Administrativa*, págs. 18-171.
[6] Véase, Íd., pág. 58.

asegurado entró por una sala de emergencia y culminó en un procedimiento quirúrgico.

Por otro lado, para que la cubierta en Estados Unidos, debido a tratamiento, equipo y facilidades, no disponibles en P.R. se active, el asegurado debió haber demostrado al asegurador que el tratamiento no estaba disponible en P.R. y, además, el asegurador tenía que preautorizar el tratamiento con una facilidad en Estados Unidos, antes de que el asegurado se hubiese ido a Estados Unidos a recibir tratamiento.[7]

Luego, el 10 de abril de 2024, la Oficina del Comisionado de Seguros notificó un *Segundo Requerimiento de Información* mediante el cual solicitó que se certificara que los servicios que recibió al asegurado en los Estados Unidos no fueron de emergencia y que certificara la disponibilidad de los médicos ortopedas oncólogos en Puerto Rico, así como la especialidad del Dr. Bibiloni.[8] En cumplimiento, el 15 de abril de 2024 Triple-S cursó la *Segunda Contestación al Requerimiento de Información.*[9] Allí, expuso que conforme a los términos de la póliza es el asegurado a quien le corresponde demostrar que su caso cumple con los requisitos para activar la excepción para cubrir los servicios médicos fuera el área geográfica de cubierta. Añadió, que el asegurado nunca proveyó evidencia de que los médicos contratados en su red no estaban disponibles, ni del referido para recibir tratamiento fuera de Puerto Rico.

El 30 de abril de 2024, el Comisionado del Seguro ordenó a Triple-S a proveer la lista de los médicos ortopedas oncológicos proveedores en la red de cubierta.[10] En contestación, Triple-S explicó que, de acuerdo con la base de datos de la Junta de Licenciamiento y Disciplina Médica no existe especialidad relacionada a la oncología, ortopedia y cirugía. No obstante, aseguró que sí contaba en su red con cirujanos ortopedas y oncólogos contratados para prestar los servicios médicos que el asegurado

---

[7] Apéndice 4 del *Recurso de Revisión Administrativa,* pág. 172.
[8] Apéndice 5 del *Recurso de Revisión Administrativa,* págs. 174-175.
[9] Apéndice 6 del *Recurso de Revisión Administrativa,* págs. 176-180.
[10] Apéndice 7 del *Recurso de Revisión Administrativa,* págs. 181-184.

buscaba recibir en el estado de la Florida. Identificó a cinco (5) cirujanos oncólogos, proveedores de la red, que estaban contratados para realizar los procedimientos bajo los códigos 25125,25515 y 20245, entre estos, al Dr. Juan Bibiloni Rodríguez.[11]

El 3 de septiembre de 2024, el Comisionado de Seguros emitió una *Orden,* notificada el 4 de septiembre de 2024, a través de la cual concluyó que Triple-S debía reembolsar los gastos médicos del asegurado y a la vez le impuso una multa de $10,000.00 por la violación de los Artículos 27.161 (1), (3), (4),(6) y (13) del Código de Seguros de Puerto Rico. En específico, concluyó:

> [E]l Asegurador al negarse a pagar la reclamación por los servicios médicos en los que se vio en la necesidad de incurrir el Solicitante ante la emergencia de salud que enfrentaba y a sabiendas de que no contaba en su red en Puerto Rico con el proveedor con especialidad de ortopedia oncológica para atender de manera inmediata la situación de salud específica del Solicitante incurrió en violación al Artículo 27.161(1), (3), (4), (6) y (13), del Código de Seguros de Puerto Rico.[12]

El 23 de septiembre de 2024, Triple-S presentó una *Solicitud de Vista Administrativa,* por estar en desacuerdo con la determinación del Comisionado de Seguros. Allí, argumentó que el referido foro tuvo una interpretación errónea del concepto de "emergencia médica" según definido claramente en el contrato de seguro, y al concluir, que la aseguradora no contaba en su red de proveedores con un especialista que ofreciera los servicios requeridos por el asegurado.[13] Posteriormente, el 9 de diciembre de 2024, Triple-S instó una *Solicitud de Sentencia Sumaria* en la que solicitó que, ante la ausencia de hechos incontrovertidos, la Oficina del Comisionado de Seguros dejara sin efecto la Orden impugnada.[14]

El recurrente expuso en su *Solicitud de Sentencia Sumaria* que la controversia se reducía a la siguiente interrogante: ¿Si la póliza

---

[11] Íd.
[12] Apéndice 8 del *Recurso de Revisión Administrativa*, págs. 185-193.
[13] Apéndice 9 del *Recurso de Revisión Administrativa*, págs. 194-198.
[14] Apéndice 10 del *Recurso de Revisión Administrativa*, págs. 199-678.

que contrató González López proveía para el pago del tratamiento que recibió en el estado de la Florida, a pesar de que había tratamiento disponible en Puerto Rico, y de que el tratamiento recibido no fue consecuencia de una emergencia surgida mientras estaba fuera de Puerto Rico? De no tratarse de una emergencia médica en Estados Unidos, entonces lo que correspondería determinar si el servicio médico requerido no estaba disponible en Puerto Rico, y, por consiguiente, procedía su precertificación.[15]

El recurrente argumentó que el servicio médico que recibió el asegurado fuera de la jurisdicción sí estaba disponible en Puerto Rico. Además, enfatizó que el asegurado en ningún momento, antes, de voluntariamente trasladarse al estado de la Florida procuró tramitar la Preautorización requerida por Triple S para poder determinar si ofrecería cubierta médica.

Por su parte, el 30 de diciembre de 2024, la Oficina del Comisionado de Seguros presentó una *Oposición a Solicitud de Resolución Sumaria* presentada por Triple S Salud, y *Solicitud de Resolución Sumaria a favor de la OCS,* mediante la cual reafirmó que no existen hechos materiales en controversia. [16] Asimismo, destacó que el Comisionado de Seguros entendió que el Dr. Bibiloni no es ortopeda oncólogo. Así como, tampoco le ofreció cita o alternativas de tratamiento que apremiaba la situación de emergencia que presentaba el asegurado. Por ende, razonó que al no haber un ortopeda oncólogo en su red que pudiera atender específicamente su condición, el asegurado se vio en la necesidad de viajar al estado de Florida, Estados Unidos.

Así las cosas, el 7 de marzo de 2025, el Comisionado de Seguros notificó la *Resolución* recurrida.[17] Según surge de la

---

[15] Íd.
[16] Apéndice 11 del *Recurso de Revisión Administrativa,* págs. 679-688.
[17] Apéndice 12 del *Recurso de Revisión Administrativa,* págs. 689-700.

determinación recurrida, el Comisionado de Seguros resolvió que las gestiones realizadas por el asegurado para recibir el tratamiento en Estados Unidos fueron necesarias por entender que era una emergencia médica. El referido foro, explicó que el cáncer del asegurado es maligno y poco común, que se origina en los huesos y pueden diseminarse a otras partes del cuerpo. Además, concluyó que la condición del asegurado es una emergencia, ya que el tratamiento inmediato resultaría en una disfunción en un órgano del cuerpo. Añadió, al ser una emergencia el señor González López no requería precertificación del plan médico por ser una emergencia. Finalmente, ordenó a Triple-S reembolsar los gastos médicos incurridos por el asegurado y le impuso una multa de $10,000.00 por prácticas desleales en violación del Código de Seguros de Puerto Rico, *supra*. Conjuntamente, declaró como hechos esenciales y no controvertidos:

1. Triple-S Salud, Inc. es un asegurador debidamente autorizado por la OCS para dedicarse al negocio de seguros en esta jurisdicción.

2. El 3 de febrero de 2024, el Solicitante sufrió un accidente que resultó en un trauma de carácter severo en el brazo derecho, recibiendo tratamiento inicial en la Sala de Emergencia del Hospital Metropolitano.[18]

3. El Hospital Metropolitano procedió a trasladar de forma urgente al Solicitante, vía ambulancia, al Centro Médico de Río Piedras.

4. Mientras se encontraba en la Sala de Emergencia en el Centro Médico, le realizaron varios estudios radiológicos al Solicitante.[19] A raíz de lo observado en los estudios realizados, el Dr. Deliz Jiménez, ortopeda, determinó que era necesario referirlo al Hospital Oncológico. El Dr. Deliz Jiménez le hizo un referido a las oficinas del Dr. Juan Bibiloni, en el Hospital Oncológico, para el martes 6 de febrero de 2024, por patología sospechosa.[20]

5. El Dr. Juan Bibiloni tiene práctica en el Hospital Oncológico del Centro Médico de Río Piedras, es profesor de Oncología Musculoesqueletal y Cirugía

---

[18] Apéndice 10 del *Recurso de Revisión Administrativa*, págs. 223-225.
[19] Íd.
[20] Íd., págs. 226-228.

Reconstructiva en Adultos de la Escuela de Medicina del Recinto de Ciencias Médicas de la Universidad de Puerto Rico; realizó un internado en Cirugía de Tumores Musculoesqueletales en el Hospital General de Massachusets, Boston, y en el Instituto Ortopédico Rizzoli en Bologna, Italia; está certificado por cirugía ortopédica y es Miembro de la American Board of Ortopoedic Surgery.[21]

6. El Hospital Oncológico es una institución que se especializa en el diagnóstico y tratamiento de cáncer, y por su excelencia, tiene la acreditación de la Joint Commission de la Commission on Cancer de la American College of Surgeons.

7. El Dr. Bibiloni, luego de examinar el brazo y estudios radiológicos, determinó que sería necesario someter al Solicitante a una cirugía de la cual se extraería material para hacer una biopsia del tejido identificado.

8. El 14 de febrero de 2024, se le practicó una biopsia que arrojó: "Right radius lesión (SN24-165a, B: 2/142024: Well-differentiated, low-grade cartilaginous with fibrous a reaction in soft tissue." See note". "Note: [...] However, the pathology fracture formation here suggests a substantial cortical erosion and the posibility of a low grade chondrosarcoma. [...]". Este resultado fue brindado el 27 de febrero de 2024 por el Laboratorio de Patología del Instituto Nacional de Cáncer.[22]

9. El 1 de marzo de 2024, el Solicitante fue atendido en una consulta inicial por el Dr. Francis John Horniceck, Ir., quien recomendó realizar una cirugía en el Sylvester Comprehensive Cancer Center de Miami, Florida, en adelante "el Hospital".[23]

10. El 4 de marzo de 2024, el Asegurador recibió del Dr. Homiceck una petición de precertificación en el documento titulado "USA Preauthotization Request Form" para la cirugía ambulatoria recomendada donde indicó que el Solicitante presenta un diagnóstico M84.533A (fractura patológica en enfermedad neoplásica) y M89.9 (trastorno de hueso no especificado) en la consulta inicial listando los códigos correspondientes a una biopsia abierta (CPT 20245), extracción del tumor e inserción de implante (CPT 25145) y fijación de la fractura (CPT 25515), intervención que se realizaría ese mismo día.[24]

11. El 5 de marzo de 2024, el Asegurador denegó la precertificación indicando que el servicio solicitado (códigos de procedimiento 25125, 25515 y 20245) está disponible en Puerto Rico y que no se recibió justificación médica emitida por el recurso médico con especialidad o subespecialidad asociada al

---

[21] Íd., pág. 229.

[22] Apéndice 7 del *Recurso de Revisión Administrativa,* págs. 231-234.

[23] Apéndice 3 del *Recurso de Revisión Administrativa,* págs. 162-171.

[24] Íd.

presente diagnóstico médico y con práctica en Puerto Rico. Además, en la práctica de denegación, el Asegurador le indicó al Solicitante que identificó como recurso médico local al Dr. Juan J. Bibiloni Rodríguez y le brindó su número de teléfono para la coordinación de las citas.[25]

12. El 5 de marzo de 2024, el Lcdo. Homero González López, en representación de José Julián González López, radicó una solicitud de investigación para que se investigue si fue correcta o no la determinación del Asegurador en denegar una solicitud de pre-certificación sometida bajo la póliza ZUA0012348079123, en adelante "la Póliza" para un procedimiento quirúrgico a realizarse en el Sylvester Comprehensive Cancer Center de Miami, Florida.[26]

13. La Póliza expedida por el Asegurador en este caso dispone:

"...
**CAPÍTULO 2: Definiciones**
1...
**39. EMERGENCIA MÉDICA:** Una condición médica que se manifiesta con síntomas agudos de suficiente severidad, incluido el dolor intenso, donde una persona lega razonablemente prudente, que tenga un conocimiento promedio de salud y medicina, pueda esperar en la ausencia de acción médica inmediata colocaría la salud de la persona en serio peligro o resultaría en una seria disfunción de cualquier miembro u órgano del cuerpo o, con respecto a una persona embarazada, que esté sufriendo contracciones, que no haya suficiente tiempo para transferirla a otras instalaciones antes del parto, o que transferirla representaría una amenaza a su salud o a la de la criatura por nacer...

**91. PRECERTIFICACIÓN:** La autorización previa expedida por Triple-S Salud para el pago de cualquiera de los beneficios y cubierta bajo esta póliza y sus endosos. Las precertificaciones se evalúan a base de las políticas precertificaciones que Triple-S Salud establezca de tiempo en tiempo.

Triple-S Salud no es responsable por el pago de dichos servicios si los mismos han sido prestados o recibido sin dicha autorización por parte de Triple-S Salud...

**CAPÍTULO 4: Beneficios Cubiertos**

---

[25] Apéndice 7 del *Recurso de Revisión Administrativa,* pág. 181.
[26] Apéndice 1 del *Recurso de Revisión Administrativa,* págs. 1-8.

### Sección 1.02 Descripción de Beneficios Médicos Cubiertos y su Responsabilidad de Pago

### ...Emergencias en Estados Unidos o que sean Precertificados y Coordinados por Triple-S Salud Porque no Están Disponibles en Puerto Rico

Triple-S cubre los servicios médicos en Estados Unidos únicamente en caso de emergencia médica o cuando Triple-S indique que el servicio no está disponible en Puerto Rico y coordine los servicios con un proveedor de Estados Unidos.

Para recibir los servicios médicos bajo esta cubierta en casos de que se requiera equipo, tratamiento y facilidades no disponibles en Puerto Rico, es requisito obtener precertificación de Triple-S Salud antes de la prestación de estos. En casos de emergencia médica, no se requiere precertificación, pero están sujetos a la corroboración por parte de Triple-S Salud de su necesidad médica...

Si la persona asegurada no recibe una preautorización para servicios bajo esta cubierta en casos de que se requiere equipo, tratamiento o facilidades no disponibles en Puerto Rico, por parte de Triple-S Salud, tendrá que pagar el costo total de los servicios y no serán elegibles para reembolso, excepto en casos de una emergencia médica...

En desacuerdo con dicha determinación, el 26 de marzo de 2025, Triple-S presentó una *Solicitud de Reconsideración*, en la cual argumentó que procedía revertir el dictamen administrativo por cuanto el asegurado no cumplía con la definición de "condición de salud de emergencia" conforme a la normativa vigente.[27]

No obstante, el término que el Comisionado de Seguros tenía para tomar alguna acción con relación a la *Solicitud de Reconsideración* transcurrió sin que el ente administrativo se expresara por lo que la moción quedó rechazada de plano. De este modo, el foro administrativo rehusó revisar su adjudicación inicial, dejando en vigor una determinación administrativa.

---

[27] Apéndice 13 del *Recurso de Revisión Judicial*, págs. 701-706.

Inconforme, el 9 de mayo de 2025, Triple-S acude ante nos mediante recurso de *Revisión Administrativa* y alega que se cometieron los siguientes errores:

**ERRÓ EL HONORABLE FORO ADMINISTRATIVO EN SU INTERPRETACIÓN DE LAS CLÁUSULAS CONTRACTUALES SOBRE COBERTURA DE SERVICIOS MÉDICOS FUERA DE LA RED EN LA PÓLIZA DE SEGURO.**

**ERRÓ LA OFICINA DEL COMISIONADO DE SEGUROS AL ORDENAR A TRIPLE S EL REEMBOLSO DE SERVICIOS MÉDICOS EXCLUIDOS DE CUBIERTA EN VIRTUD DEL CONTRATO DE SEGUROS.**

**ERRÓ LA AGENCIA ADMINISTRATIVA AL IMPONER A TRIPLE S UNA MULTA ADMINISTRATIVA BAJO EL FUNDAMENTO DE QUE INCURRIÓ EN PRÁCTICAS DESLEALES BAJO EL CÓDIGO DE SEGUROS DE PUERTO RICO.**

Por su parte, el 30 de junio de 2025, el señor González López presentó su *Oposición a la Revisión Administrativa*. En este, alega, entre otras cosas, que la definición de emergencia médica del contrato de seguro cumple con condición del asegurado. A su vez, aduce que Triple-S está obligado a cubrir los servicios en Estados Unidos, ya que no había especialista en Puerto Rico que atendiera el tipo de cirugía que este requería.

De igual forma, ese mismo día, el Comisionado de Seguros presentó su *Oposición a la Revisión Administrativa*. En síntesis, enfatiza que la condición de emergencia médica debe verse desde el punto de una persona prudente y razonable con conocimiento promedio de salud y medicina, no desde el punto de vista de un profesional de la salud. Añade, que no se requería preautorización de Triple-S para poder recibir los servicios médicos, ya que la condición del asegurado era un caso de emergencia.

## II.

### A. Deferencia judicial a las determinaciones administrativas

En lo pertinente, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38 de 30 de junio

de 2017, según enmendada, 3 LPRA sec. 9601 *et seq.* establece el marco normativo que rige la revisión judicial de las decisiones emitidas por las agencias administrativas. *Otero Rivera v. Bella Retail Group, Inc.*, 2024 TSPR 70, 214 DPR __ (2024). Dicho marco se sustenta en el principio de razonabilidad, lo que implica evaluar que no se haya actuado de manera arbitraria o ilegal, o de forma tan irrazonable que constituya un abuso de discreción. *Torres Rivera v. Policía de PR*, 186 DPR 606, 626 (2016). A tenor, existen tres aspectos que delimitan el alcance de la revisión judicial de las decisiones administrativas: "(1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si, mediante una revisión completa y absoluta, las conclusiones de derecho del ente administrativo fueron correctas". *Rolón Martínez v. Caldero López*, 201 DPR 26, 36 (2018) (citando a *Pagán Santiago v. ASR*, 185 DPR 341, 358 (2012)).

En virtud de lo anterior, "[u]na parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones [...]". Sec. 4.2 de la Ley Núm. 38-2017, 3 LPRA sec. 9672. De ordinario esta revisión judicial procede una vez se adjudican todas las controversias pendientes ante la agencia y concluyen los trámites administrativos. El término para radicar la revisión judicial es el siguiente:

> **Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados**

**a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia** o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. 3 LPRA § 9672.

En materia del alcance de la revisión judicial, "el Tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio". *Id.* Sec. 4.5. Respecto a las determinaciones de hechos de las decisiones de las agencias, estas serán sostenidas por el tribunal siempre que se fundamenten en evidencia sustancial que obra en el expediente administrativo. *Id.* En contraste, las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. *Id.* Recientemente, nuestro más alto foro reiteró que **"al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática [...]"**. *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR __ (2025) (Énfasis en el original omitido).

### B. Los seguros en Puerto Rico

La materia de seguros en Puerto Rico está investida de un alto interés público, dado que juega un gran papel en la protección de los riesgos que amenazan la vida o el patrimonio de la ciudadanía. *W.M.M., P.F.M. et al. v. Colegio et al.,* 211 DPR 871 (2023); *San Luis Center Apts. et al. v. Triple-S,* 208 DPR 824 (2022); *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1019 (2020); *R.J. Reynolds v. Vega Otero,* 197 DPR 699, 706 (2017). Los seguros son uno de los principales soportes en nuestra jurisdicción, ya que protege o amortigua los riesgos que puede experimentar cualquier persona, debido a las inclemencias del tiempo, accidentes y

enfermedades, entre otros. *San Luis Center Apts. et al. v. Triple-S, supra,* pág. 832.

Dado a que los seguros son de gran importancia en la cotidianidad del ciudadano común, esta industria ha sido extensamente reglamentada mediante la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como el Código de Seguros de Puerto Rico, 26 LPRA sec. 101 *et seq.* (Código de Seguros de Puerto Rico), y de manera supletoria el Código Civil. *W.M.M., P.F.M. et al. v. Colegio et al., supra.*

Ahora bien, en los seguros si términos de la póliza son claros, específicos y ausentes de ambigüedad, su cumplimiento será obligatorio pues el contenido del contrato constituye la ley entre las partes. *Barreto Nieves etl al. v. East Coast,* 213 DPR 852, 864, (2024); *San Luis Center Apts. v. Triple-S, supra,* pág. 832. Los términos de una póliza se entenderán que están claros cuando su lenguaje sea específico y no sea susceptible a distintas interpretaciones. *San Luis Center Apts. v. Triple-S, supra,* pág. 833. No obstante, al evaluar el alcance de la protección brindada por una póliza, "es necesario examinar si existen cláusulas de exclusión en el contrato mediante las cuales la aseguradora exceptúa determinados eventos, riesgos o peligros de la cubierta". *Rivera Matos et al. v. Triple-S et al., supra,* pág. 1021.

Es sabido, que las exclusiones son desfavorecidas, de modo que deben de interpretarse restrictivamente en contra del asegurador, con el fin de brindar mayor protección al asegurado. *Viruet et al. v. SLG Casiano-Reyes,*194 DPR 271 (2015); *Natal Cruz v. Santiago Negrón et al.,* 188 DPR 564 (2013); *Maderas Tratadas v. Sun Alliance et al.,* 185 DPR 880 (2012). Ahora bien, al igual que la interpretación del resto de la póliza, "si los términos de las cláusulas de exclusión son claros y aplican a una situación determinada, no podrá responsabilizarse a la aseguradora por aquellos riesgos

expresamente exceptuados". *Viruet et al. v. SLG Casiano-Reyes,* *supra,* pág. 279; *Natal Cruz v. Santiago Negrón et al. supra.*

Por otra parte, mediante la Ley Núm. 194 de 29 de agosto de 2011, según enmendada, conocida como el Código de Seguros de Salud de Puerto Rico, 26 LPRA sec. 9001 *et seq.* (Código de Seguros de Salud), se reguló el manejo de las organizaciones de seguros de salud o aseguradores. Entre sus definiciones se encuentra la de "condición médica de emergencia". En específico, esta constituye:

> [C]ondición médica que se manifiesta por síntomas agudos de suficiente severidad, incluyendo dolor severo, ante la cual una persona lega, razonablemente prudente y con un conocimiento promedio de salud y medicina, puede esperar que, en ausencia de atención médica inmediata, la salud de la persona se colocaría en serio peligro, o resultaría en una seria disfunción de cualquier miembro u órgano del cuerpo o con respecto a una mujer embarazada que esté sufriendo contracciones, que no haya suficiente tiempo para trasladarla a otras instalaciones antes del parto, o que trasladarla representaría una amenaza a su salud o a la de la criatura por nacer. Art. 2.030(d) del Código de Seguros de Salud, 26 LPRA sec. 9003.

De igual forma, en *Flores Ramírez v. Maldonado,* 138 DPR 722, 730 (1995), nuestro Tribunal Supremo explicó que los servicios de emergencia médica se distinguen por ser los "primeros auxilios que deben ofrecerse en un breve período de tiempo, a una persona que tema que su vida o estado de salud está en peligro".

Por último, el Artículo 2.050(f) del Código de Seguros de Salud, *supra,* dispone que "[n]ingún plan médico individual o grupal, que incluya servicios de emergencia requerirá aprobación previa para tales servicios, independientemente de que el proveedor sea un proveedor participante o no". 26 LPRA sec. 9005.

### C. Cubierta de Triple-S

Sabido es que Triple-S es una aseguradora debidamente autorizada por la Oficina del Comisionado de Seguros para dedicarse al negocio de seguros en Puerto Rico. Al adquirir el asegurado una póliza con Triple-S, se compromete mediante

contrato a los términos y condiciones establecidos por dicha aseguradora.

En lo aquí pertinente, la póliza de Triple-S (Plan Metal Oro), dispone que, entre los *Beneficios Cubiertos*, la referida aseguradora ofrecerá cubierta médica en Estados Unidos únicamente en caso de emergencia médica o cuando esta aseguradora indique que el servicio no está disponible en Puerto Rico. Véase, Sección 1.02 del Capítulo 4.[28] Para esto último, es requisito obtener precertificación de Triple-S antes de recibir los servicios médicos en Estados Unidos. Íd. Si el asegurado no recibe una preautorización por parte de Triple-S Salud, tendrá que pagar el costo total de los servicios y no serán elegibles para reembolso. Íd. No obstante, en casos de emergencia médica, no se requiere precertificación, pero están sujetos a la corroboración por parte de Triple-S Salud de su necesidad médica. Íd.

De lo anterior, el Capítulo 2, de la póliza de Triple-S (Plan Metal Oro) define el término "emergencia médica de salud" como:

> 39. Una condición médica que se manifiesta con síntomas agudos de suficiente severidad, incluido el dolor intenso, donde una persona lega razonablemente prudente, que tenga un conocimiento promedio de salud y medicina, pueda esperar en la ausencia de acción médica inmediata colocaría la salud de la persona en serio peligro o resultaría en una seria disfunción de cualquier miembro u órgano del cuerpo [...].[29]

De igual modo, la póliza establece que Triple-S ofrecerá cubierta para un servicio médico de emergencia se requiere que el servicio brindado sea para el tratamiento de una condición de emergencia en un hospital o una sala de emergencia independiente.[30] Además, el plan cubre solo aquellos servicios de emergencia y suministros que son médicamente necesarios y se realizan para tratar o

---

[28] Apéndice 10 del *Recurso de Revisión Judicial*, pág. 315.
[29] Apéndice 3 del *Recurso de Revisión Judicial*, pág. 34.
[30] Apéndice 10 del *Recurso de Revisión Judicial*, pág. 505.

estabilizar la condición de emergencia de una persona asegurada en un hospital.[31]

### D. Facultad de imponer multas del Comisionado de Seguros

Dentro de las facultades que tiene el Comisionado de Seguros, está el adjudicar controversias sobre violaciones al Código de Seguros de Puerto Rico en cumplimiento con el procedimiento dispuesto en la "Ley de Procedimiento Administrativo Uniforme". Art. 2.030(14) del Código de Seguros de Puerto Rico, *supra*, 26 LPRA sec. 235. De igual forma, el Comisionado tendrá la facultad de imponer sanciones y penalidades administrativas por violaciones a dicho Código y a los reglamentos aprobados en virtud de éste y dictar cualquier remedio pertinente autorizado en el Código de Seguros. Art. 2.030(17) del Código de Seguros de Puerto Rico, *supra*.

En lo pertinente a la controversia ante nos, el Artículo 27.161(1), (3), (4), (6) y (13) del Código de Seguros de Puerto Rico, *supra*, 26 LPRA 2716a, establece que se incurrirá en prácticas desleales, cuando:

> 1. Hacer falsas representaciones de los hechos o de los términos de una póliza, relacionado con una cubierta en controversia.
> [...]
> 3. Dejar de adoptar e implementar métodos razonables para la rápida investigación de las reclamaciones que surjan bajo los términos de una póliza.
> 4. Rehusar pagar una reclamación sin llevar a cabo una investigación razonable basada en la información disponible.
> [...]
> 6. No intentar de buena fe de llevar un ajuste rápido, justo y equitativo de una reclamación de la cual surja claramente la responsabilidad.
> [...]
> 13. Negarse a ofrecer una explicación razonable de los términos de una póliza en relación con los hechos y la ley aplicable, para la denegación de una reclamación o de una oferta de transacción.

A su vez, el Comisionado de Seguros podrá, luego de una vista, denegar, suspender o revocar la autorización de un asegurador para

---

[31] Íd.

concertar seguros, cuando dicho asegurador dejare de cumplir o violare alguna disposición del mismo código. Art. 3.210(1) del Código de Seguros de Puerto Rico, *supra,* 26 LPRA sec. 321(1). Además, el Artículo 3.211 del Código de Seguros de Puerto Rico, *supra,* dispone que "cualquier asegurador que violare una disposición de este podrá imponérsele una multa administrativa que no excederá de cinco mil (5,000) dólares por cada violación. Disponiéndose, que el total de multas por diferentes violaciones no excederá de cincuenta mil dólares ($50,000)". 26 LPRA sec. 321a. Ahora bien, y de forma más generalizada, el Artículo 27.260 del Código de Seguros de Puerto Rico, *supra,* autoriza imponer una multa administrativa que no excederá de diez mil (10,000) dólares por cada violación al referido Código. 26 LPRA sec. 2735.

### III.

El recurrente alega que erró la Oficina del Comisionado de Seguros al ordenarle el reembolso de los gastos médicos incurridos por el asegurado en Estados Unidos. A su vez, aduce que el referido foro incidió al interpretar que no estaban disponibles en la red de Puerto Rico un especialista para la condición del asegurado. Por último, arguye que dicho foro erró al imponerle una multa por prácticas desleales al amparo del Código de Seguros de Puerto Rico, *supra.*

Surge del expediente ante nos, que el 3 de febrero de 2024, el señor González López visitó la Sala de Emergencia del Hospital Metropolitano debido a una fractura en su brazo derecho. Como resultado de varias evaluaciones —independientes a dicha fractura— este fue diagnosticado con cáncer en el hueso de carácter leve y en etapa temprana de desarrollo. Pese a que este fue atendido por el Dr. Bibiloni, cirujano ortopeda que desempeña su práctica en el Hospital Oncológico de Puerto Rico y quien detectó en la biopsia la condición médica, el asegurado optó por no regresar para

continuar con el tratamiento con este. Más bien, tres (3) días después de su diagnóstico, sin haber recibido una consulta previa ni preautorización de la aseguradora, el asegurado se trasladó al estado de Florida, Estados Unidos para ser evaluado por Francis John Hornicek JR., MD de la Universidad Ortopédica de Miami, Florida.

Conforme a la prueba documental, para la fecha de los hechos, el señor González López estaba asegurado bajo la póliza de Triple-S, Plan Metal Oro. En específico, la cubierta del asegurado aplicaba para Puerto Rico y de manera excepcional en los Estados Unidos. Ahora bien, como excepción Triple-S cubría al asegurado en Estados Unidos, cuando se haya debido a una emergencia médica o el servicio médico no estuviese disponible en Puerto Rico.

En primer lugar, tanto la definición de emergencia provista por el Código de Seguros de Salud, *supra,* y la póliza de Triple-S indican que la condición médica es aquella que se manifiesta por síntomas agudos de suficiente severidad. La emergencia debe ser tal que el no recibir atención médica **inmediata**, la salud de la persona se colocaría en serio peligro, o resultaría en una seria disfunción de cualquier miembro u órgano del cuerpo. Además, al evaluar si estamos ante una emergencia el criterio debe ser el de una persona lega, razonablemente prudente y con un conocimiento promedio de salud y medicina.

De lo anterior, no hay duda de que la condición médica del asegurado no cumplía con la definición de emergencia. Surge del expediente, que el señor González López se enteró en Puerto Rico del cáncer por unos análisis que le realizaron a causa de una fractura en su brazo derecho; un evento totalmente independiente al propósito de su visita a la Sala de Emergencia. Anterior a dicho evento, no surge del expediente que el asegurado tuviese síntomas agudos o dolor severo ocasionados más allá de la fractura que fue

atendida en Sala de Emergencias. Por tanto, el asegurado no pudo demostrar que la condición médica le estaba ocasionando el grado de dolor que se requiere para determinar que se trataba de una emergencia médica.

De igual forma, entendemos que la condición médica no era de tal peligrosidad, que el no recibir atención médica inmediata pondría la salud del asegurado en riesgo. Se desprende del expediente que el tipo de cáncer del señor González López era de carácter leve y estaba en etapa temprana de desarrollo.[32] Pese a que, el cáncer es una enfermedad preocupante que requiere que sea atendida lo antes posible; no existe prueba en el expediente para establecer que el grado y la etapa en que se encontraba la del asegurado debe ser catalogada como una emergencia médica.

Ahora bien, aún si la condición del asegurado hubiese sido una emergencia médica, para que la cobertura aplicara en los Estados Unidos debía demostrar cualquiera de las siguientes circunstancias: (1) este tenía que haberla sufrido en Estados Unidos y evidenciar que entró por sala de emergencia, y culminó en un procedimiento quirúrgico; (2) si el asegurado se encontraba en Puerto Rico, bastaría con probar que la Isla no contaba con los especialistas necesarios para atender su condición.[33] No obstante, este último inciso está sujeto a precertificación de Triple-S y aunque para emergencias no sea necesario dicha autorización, sí está sujeto a corroboración de esta aseguradora.[34]

Tal y como se dispuso, tres (3) días después que el señor González López recibiera su diagnóstico, sin haber recibido una consulta previa ni preautorización de la aseguradora, viajó al estado de Florida para atender su condición médica. Nótese que, del

---

[32] Véase, Apéndice 2 del *Recurso de Revisión Administrativa,* págs. 14-16.
[33] Véase, Apéndice 3 del *Recurso de Revisión Administrativa,* pág. 58.
[34] Íd.

expediente no se desprende que el señor González López tuviese conocimiento de la disponibilidad y cualificaciones de los especialistas en Puerto Rico. Tampoco surge que el Dr. Bibiloni haya prescindido de sus servicios por no estar capacitado para atender el tipo de operación quirúrgica que el asegurado requería. Igualmente, no surge del expediente prueba de que los médicos en su red no estaban disponibles, ni de un referido para recibir tratamiento fuera de Puerto Rico. Por el contrario, el señor González López tras recibir su diagnóstico, prefirió trasladarse voluntariamente a Estados Unidos para recibir la atención médica allá, sin antes tan siquiera considerar un especialista en Puerto Rico.

Según los documentos del expediente, el asegurado cuando llegó a Miami, Florida fue evaluado el 1 de marzo de 2024 como paciente nuevo del Dr. Francis John Hornicek. De las notas del Dr. Hornicek se desprende que el Sr. González López fue referido por el Dr. D'Amato de la Universidad de Miami por un "*low grade cartilage tumor of right radius*". Indicó que el paciente reportó que el 3 de febrero de 2024 golpeó un espejo y se fracturo el radio derecho. Se le realizó una biopsia el 13 de febrero de 2024 y el resultado confirmó un tumor de cartílago leve. Asimismo, consignó que el paciente "has no other history of antecedent trauma, no constitutional symptoms, has a normal apetite and a stable weight. He has no other musculoskeletal lumps, bumps or masses". En *Assessment*, se consignó "[n]o diagnosis found. Jose J Gonzalez Kopez is a 29 y.o male with low grade cartilage tumor of right radius and pathologic fracture. We had an extensive discussion today regarding the natural course of the patient's condition, the pathoanatomy, and treatment alternatives. Upon review of imaging and clinical symptoms, we recommend open biopsy of bone lesion; curetting and grafting; open reduction and internal fixation of

pathologic fracture of right radius".[35]    Así pues, estando el asegurado en Estados Unidos, es que el 4 de marzo de 2024, se solicitó preautorización de Triple-S en la que justificó que era necesario el recibir los servicios en dicho país, ya que allí se encontraba el doctor más cercano para atender su condición médica. El 5 de marzo de 2024, Triple S Salud denegó la solicitud debido a que los servicios estaban disponibles en Puerto Rico y no se recibió justificación médica emitida por el recurso médico con especialidad o subespecialidad asociada al diagnóstico medico presente y con práctica en Puerto Rico. No obstante, Triple-S le indicó al asegurado que habían identificado un recurso médico local, Juan J. Bibiloni-Rodríguez, MD, FAAOS, Board Certified in Orthopedic Surgery and Fellow of the American Board of Orthopedic Surgery.

Nótese que, el Dr. Bibiloni, quien había atendido la biopsia, era un candidato con vasta experiencia y cualificado para el tipo de tratamiento que necesitaba el señor González López. No obstante, y aún con la negativa de Triple-S, el señor González López optó por recibir el tratamiento en Estados Unidos. De modo que, el asegurado no cumplió con la segunda excepción de su cubierta, ya que de forma arbitraria y por su propia preferencia decidió tratarse con un especialista en Estados Unidos, omitiendo la denegatoria de la asegurado y la posibilidad de recibir el tratamiento en Puerto Rico.

En la Resolución recurrida, el Comisionado de Seguros concluyó que se activó la cubierta de "Out of Area Coverage" debido a que la condición del asegurado era una emergencia médica. Según el Comisionado, el "condrosarcoma es un cáncer maligno poco común que se origina en los huesos y puede diseminarse a otras partes del cuerpo. Los huesos son órganos rígidos que forman parte

---

[35] Véase, Apéndice 9 del Recurso de Revisión Administrativa, págs. 239 -242.

del sistema esquelético, por lo que el no tratamiento inmediato del condrosarcoma resultaría en una disfunción en un órgano del cuerpo". Ante ello, estableciendo que se cumplen con los requisitos para determinar que la condición del solicitante (asegurado) es una condición de salud de emergencia.

No obstante, los documentos que obran en el recurso ante nuestra consideración esta huérfano de literatura médica o documentación medica que sostenga dicha determinación del foro administrativo. En ninguno de los documentos médicos del asegurado surge que la condición que padecía el Sr. González López reflejaba síntomas agudos severos; que su salud estaba en peligro o que conllevaría una disfunción de un miembro u órgano del cuerpo. Los documentos médicos del Dr. Horniceck, Jr. tampoco indican que la cirugía recomendada fuera una de emergencia.

Según mencionamos anteriormente, la cubierta del asegurado es para Puerto Rico. La Sección 1.02 del Capítulo 4 de la póliza del asegurado relativo a los Beneficios Cubiertos, establece que Triple S Salud ofrecerá cubierta médica en Estados Unidos únicamente en caso de emergencia médica o cuando Triple S indique que el servicio no está disponible en Puerto Rico y coordine los servicios con un proveedor de Estados Unidos. En casos donde el tratamiento no este disponible en Puerto Rico, es requisito obtener precertificación de Triple S Salud **antes de la prestación de estos.** La póliza dispone que, si la persona asegurada no recibe la preautorización para dichos servicios, tendrá que pagar el costo total de los servicios y no será elegible para reembolso.

Ante ello, concluimos que la determinación del Comisionado de Seguros no se sostiene con los hechos no controvertibles ni con las disposiciones del Contrato de Seguros. En este caso, es al asegurado a quien le corresponde demostrar que su caso cumple con los requisitos para activar la excepción para cubrir los servicios

médicos fuera el área geográfica de la cubierta. Conforme esbozamos, el señor González López no demostró que se cumplieron las excepciones contenidas en su póliza para que le cubriera los gastos médicos en Estados Unidos. Las disposiciones de la póliza de seguros son claras y al no cumplirse con ninguna de las dos (2) excepciones relacionadas a los beneficios cubiertos en Estados Unidos, concluimos que el Comisionado de Seguros abuso de su discreción al ordenar el reembolso de los gastos médicos incurridos por el asegurado.

Por otra parte, no procede la multa impuesta por el Comisionado de Seguro al recurrente. En esencia, la multa se impuso por las alegadas prácticas desleales que cometió Triple-S al denegar la autorización de los gastos médicos del asegurado. Al resolver que no se cometieron los errores antes discutidos, procede como consecuencia que se deje sin efecto la multa impuesta.

### IV.

Por los fundamentos expuestos, **revocamos** el dictamen recurrido.

La Jueza Grana Martínez disiente con voto escrito.

**Notifíquese.**

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

| COMISIONADO DE SEGUROS DE PUERTO RICO RECURRIDO | KLRA202500273 | Revisión judicial procedente de la Oficina del Comisionado de Seguros |
|---|---|---|
| v. | | Caso Núm. I-2024-063 |
| TRIPLE-S SALUD, INC. RECURRENTE | | Sobre: Interpretación de póliza de seguro; imposición de multa administrativa |

Panel integrado por su presidenta, la Jueza Grana Martínez, la Jueza Díaz Rivera y la Juez Lotti Rodríguez[1].

## VOTO DISIDENTE JUEZA GRANA MARTÍNEZ

La controversia ante nuestra consideración requiere que auscultemos, si la agencia erró al interpretar las cláusulas contractuales sobre cobertura de servicios médicos fuera de Puerto Rico y ordenar el reembolso de los gastos en los que incurrió el asegurado y, por último, si la multa impuesta contra la aseguradora a raíz de los hechos de este caso es ilegal.

Como punto de partida precisa enfatizar que la política pública del Gobierno de Puerto Rico es que la salud es un asunto de naturaleza ética, de justicia social y de derechos humanos sobre el ánimo de lucro. Por tal razón, en caso de necesitar interpretar las disposiciones de la Ley del Código de Seguros de Salud de Puerto Rico, en adelante el Código, o surgir algún conflicto entre lo establecido en este y cualquier otra legislación, la interpretación que prevalecerá será aquella que resulte más favorable para el paciente. 26 LPRA sec. 9002.

---

[1] Conforme la DJ2024-062C del 6 de mayo de 2025, mediante la cual se asignó la integración de la Juez Glorianne M. Lotti Rodríguez al Panel XII.

Número Identificador

RES2025_____

Expresado lo anterior, el Código define la "Condición médica de emergencia" como una condición médica **que se manifiesta por síntomas agudos de suficiente severidad**, incluyendo dolor severo, **ante la cual una persona lega, razonablemente prudente y con un conocimiento promedio de salud y medicina, puede esperar que, en ausencia de atención médica inmediata, la salud de la persona se colocaría en serio peligro,** o resultaría en una seria disfunción de cualquier miembro u órgano del cuerpo o, con respecto a una mujer embarazada que esté sufriendo contracciones, que no haya suficiente tiempo para trasladarla a otras instalaciones antes del parto, o que trasladarla representaría una amenaza a su salud o a la de la criatura por nacer. 26 LPRA sec. 9003 (d).

La controversia se torna un tanto técnica al Triple S sostener lo que a su parecer no constituye un servicio médico de emergencia toda vez que alegan que un diagnóstico de cáncer, el cual reconocen que razonablemente requiere tratamiento oportuno, no cae dentro de la definición de la aseguradora de una emergencia médica. Arguyen que además, el expediente médico es silente en cuanto a la detección de síntomas agudos de suficiente severidad que requiriera una acción inmediata, porque su vida pudiera estar en peligro inmediato o pudiera padecer de una disfunción de algún órgano o miembro de su cuerpo, requisitos para cumplir con la definición de "emergencia médica" que establece la póliza contratada.

Puntualizan que el tratadista Couch aduce que en cuanto a la evaluación de si una situación configura una emergencia médica cubierta bajo la póliza, es preciso recordar que "si el asegurado estaba experimentando una 'emergencia' depende de las circunstancias apremiantes al momento en que busca tratamiento, y no de los servicios que le hayan sido prestados ni del diagnóstico emitido en el hospital". Véase, sec. 145:24. Generally, 1OA Couch on Ins. Sec. 145:24

Entonces precisa repasar varios hechos pertinentes. El 6 de febrero de 2025 el Dr. Deliz Jiménez, Ortopeda, realizó varios estudios radiológicos y recomendó la evaluación de un ortopeda oncólogo.[1] Relata José Julián González en su escrito ante este foro, que se le refirió a la oficina del Dr. Juan Bibiloni quien es cirujano ortopeda con un fellowship en Musculoskeletal Tumor Surgery. Relató el señor González que el 14 de febrero un médico residente bajo la supervisión del Dr. Bibiloni le practicó una segunda biopsia, cuyo resultado fue compartido con el señor González 13 días después de practicada la autopsia, o sea el 27 de febrero. Allí otro médico residente le informó que debía operarse antes de dos semanas. González explicó que sentía que su vida estaba en peligro y sabiendo que el DR. Bibiloni no era cirujano oncológico sino cirujano ortopeda recabó la ayuda de un cirujano ortopeda oncólogo, el Dr. Francis J. Horniceck. El 1 de marzo de 2024, el Dr. Francis J. Horniceck. le informó que había que realizar la cirugía de manera inmediata. Así las cosas, detalló que solicitaron la precertificación para la cirugía, siendo denegada por el fundamento de que el servicio estaba disponible en Puerto Rico.

A mi entender, entonces, la verdadera razón para denegar el servicio es que Triple S entendió que el servicio estaba disponible en Puerto Rico.

Arguye Triple S que el Dr. Bibiloni es cirujano ortopeda con práctica especializada en el Hospital Oncológico de Puerto Rico. Sostiene que, aunque concentra su práctica en la cirugía ortopédica de pacientes con cáncer, Triple S no puede clasificarlo en su red como un "ortopeda oncólogo" porque dicha especialidad no está formalmente reconocida por la Junta de Licenciamiento y Disciplina Médica de Puerto Rico, ni por la American Board of Medical Specialties. Aduce que por esa razón no puede tenerlo en su lista de proveedores médicos. En fin, Triple S acepta que el Dr. Bibiloni no

aparece en su red de proveedores médicos como ortopeda oncólogo. Admisión suficiente para concluir que el servicio de un "ortopeda oncólogo" no estaba disponible. Independientemente las razones por las cuales no esté disponible, lo cierto es que Triple S admite que no estaba en su red de proveedores médicos.

La Oficina del Comisionado de Seguros arguye que Triple S, a sus requerimientos de información respondió que su póliza solo cubría los servicios de emergencia en EU recibidos en una sala de emergencia o cuando se obtiene certificación previa autorizando el servicio, porque un especialista o subespecialista con practica en PR acreditara que el servicio no se prestaba en PR. A mi entender, el criterio médico no puede ser sustituido por el criterio de la empresa que brinda el plan médico. El 6 de febrero de 2025 el Dr. Deliz Jiménez, Ortopeda, quien lo atendió en Centro Médico recomendó, entre otras, la evaluación de un ortopeda oncólogo.[2] El señor González estuvo prácticamente un mes, siendo atendido por **médicos residentes** bajo la supervisión del Dr. Bibiloni. No es hasta el 27 de febrero que otro médico residente le informa que debía operarse antes de dos semanas. Reconociendo la necesidad de atender la situación de manera inmediata.

Para efectos de entender lo que el señor González experimento precisa reconocer que el condrosarcoma es un tipo de cáncer poco frecuente que por lo general comienza en los huesos, pero a veces puede presentarse en el tejido blando cercano a los huesos y que en ocasiones crece con rapidez y tiene un alto riesgo de difundirse a otras zonas del cuerpo, de modo que estos cánceres pueden ser dificiles de tratar.[3]

Entonces una persona lega, que no es experta, al cual se le dice que tiene un tipo de cáncer que hay que atender por un ortopeda oncólogo y de manera inmediata, está plenamente justificado a concluir que estaba ante una situación de emergencia

pues esperar ponía en riesgo su propia vida ante la posibilidad de que el cáncer se difundiera a otras partes del cuerpo.

No me cabe duda alguna de la inmediatez de la emergencia. Es fácil colocarse en la posición de una persona que recibe un diagnóstico de cáncer y compartir el sentido de urgencia en el tratamiento para salvar su vida. Me parece evidente, aun mas cuando el cáncer ya se había extendido del hueso al cartílago.

Por otro lado, no dudo de la capacidad y experiencia del Dr. Bibiloni y los médicos residentes que atendieron al señor González. A mi entender, aunque el Dr. Bibiloni no es un ortopeda oncólogo, es cirujano ortopeda con un *fellowship* en Tumores musco esqueletales. Desconozco, porque no surge del expediente las especialidades de los médicos residentes que atendían al señor González bajo la supervisión del Dr. Bibiloni. No obstante, a mi entender si la recomendación era un ortopeda oncólogo que no surgía de la red de proveedores médicos, el diagnostico era de suficiente gravedad para recibir atención inmediata y calificar como una emergencia.

Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. 3 LPRA sec. 9675.

Los hechos de este caso están muy bien definidos. Un diagnóstico serio, con capacidad de causar muerte de no atenderse inmediatamente. Por otro lado, una recomendación médica que no podía ser atendida con los recursos disponibles.

Por último, coincido plenamente con la conclusión de derecho de la Oficina del Comisionado de Seguros, porque cuenta con vasta experiencia en la interpretación de los distintos tipos de seguros. Su interpretación fue conforme a la Ley del Código de Seguros de Salud

de PR y la política pública "En caso de necesitar interpretar las disposiciones de la Ley del Código de Seguros de Salud de Puerto Rico, en adelante el Código, o surgir algún conflicto entre lo establecido en este y cualquier otra legislación, la interpretación que prevalecerá será aquella que resulte más favorable para el paciente, supra." Por lo ante expresado disiento de la opinión mayoritaria pues hubiese confirmado la actuación administrativa en su totalidad.

En San Juan, Puerto Rico, a 26 de agosto de 2025.


Grace M. Grana Martínez
Jueza de Apelaciones